## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

| | | |
|---|---|---|
| **MICHAEL E. BROWN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 3:15–01197** |
| | ) | |
| **DAVID BALLARD, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Respondent's Motion for Summary Judgment (Document No. 11), filed on May 26, 2015, by Derek Austin Knopp, Assistant Attorney General. Petitioner, by counsel, James M. Cagle, filed his Response in Opposition on June 18, 2015. (Document No. 18.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's Motion for Summary Judgment (Document No. 11).

### PROCEDURAL HISTORY

**A.     Criminal Action No. 98-F-221:**

On September 18, 1998, the Grand Jury of Cabell County, West Virginia, returned an Indictment against Petitioner, charging him with two counts of First Degree Murder in violation of West Virginia Code § 61-2-1. State v. Brown, Criminal Action No. 98-F-221 (Cir. Ct. Cabell Co. March 4, 1999); (Document No. 11-1, p. 134.) Following a six-day jury trial, Petitioner was convicted on March 4, 1999, of both counts of First Degree Murder. (Id., p. 130.) By Order entered on March 17, 1999, Petitioner was sentenced to two consecutive sentences of life imprisonment with mercy. (Id., pp. 60 - 62.)

On March 13, 2000, Petitioner, by counsel, Joseph P. Albright, Jr., filed his Petition for

Appeal with the West Virginia Supreme Court of Appeals, raising the following assignments of error:

1.  The presence of a thirteenth juror at the deliberations of Defendant Brown's jury merits reversal of his conviction under both constitutional and plain error standards.

2.  The trial court erred by discharging a trial juror without cause shortly before instructing the jury.

3.  The trial court erred by conducting discussions with counsel regarding jury instructions while the appellant was not in the courtroom.

4.  The trial court abused its discretion by denying the appellant's Motion to Continue the Trial.

5.  The trial court erred by going "off the record" at least nine times during the trial in violation of statutory and case law and depriving the appellant and his counsel of a complete record on appeal.

6.  Defendant Brown's Sentencing Order should be vacated, and if his conviction is not reversed, a Presentence Investigation and Report, full opportunity for allocation and re-sentencing ought be required.

7.  The trial court erred in denying the appellant's Motion to Hire a Jury Specialist at Public Expense.

8.  The trial court erred in denying the appellant's Motion for Jury View of the Crime Scene.

9.  The trial court erred by deviating from the alternate juror selection procedure set forth in Rule 24(c), W.V.R. Cr. P. and by granting both sides additional peremptory challenge to alternates.

10. The appellant's convictions should be reversed under the doctrine of cumulative error.

11. The prosecuting attorney knew or should have known that there was a substantial probability that some of the key evidence against the appellant was false and it materially affected the verdict not raised below.

(Id., pp. 2 - 62.) The West Virginia Supreme Court affirmed Petitioner's convictions, but reversed

2

and remanded for the preparation of a presentence report along with a new sentencing hearing. (Document No. 1-1.); State v. Brown, 210 W.Va. 14, 552 S.E.2d 390 (2001). On July 10, 2001, the Circuit Court re-sentenced Petitioner to the same penalty as set forth above. (Document No. 1, p. 2.)

**2.     State *Habeas* Proceedings:**

On May 2, 2002, Petitioner, by counsel, Mr. Albright, filed a Petition for Writ of *Habeas Corpus* in the Circuit Court of Fayette County. Brown v. Coleman, Civil Action No. 02-C-357 (Cir. Ct. Cabell Co. January 9, 2014); (Document No. 11-1, pp. 103 - 105.) Petitioner raised the following grounds for *habeas* relief:

1.    Petitioner received ineffective assistance of counsel from Mr. Spurlock and Mr. Rosinsky in violation of his right to counsel under Sixth and Fourteenth Amendments to the Constitution of the United States of America and the Constitution of the State of West Virginia.

2.    The trial court erred by excusing a juror who was not "unable to perform his duty" and the Petitioner was prejudiced thereby as such error could have affected the outcome of the case.

3.    The Prosecuting Attorney in and for Cabell County, West Virginia, and the juror, Brenda Foster, erred by failing to disclose that Brenda Foster's son had a criminal charge pending against him in Judge O'Hanlon's division of the Circuit Court of Cabell County, West Virginia at the time of Petitioner's trial and Petitioner was prejudiced by the failure to disclose by being unable to properly question Ms. Foster and by such other matters as may become apparent during the investigation and prosecution of this Petition.

4.    The Prosecuting Attorney wrongfully failed to disclose that a third person was living at the residence where Mr. Davis and Mr. Black were killed thereby depriving Petitioner of a full and fair investigation regarding the facts of his case.

5.    The trial court erred by permitting the alternate juror to accompany the jury into deliberations and Petitioner was prejudiced thereby.

6.    The trial court erred in post-trial proceedings by admitting into evidence

3

affidavits from jurors regarding the participation or lack thereof by the alternate juror and said evidence was used against the Petitioner in his appeal to the West Virginia Supreme Court of Appeals.

7.      The juror, Joy Bryant, wrongfully failed to disclose the full extent of her knowledge of Matthew Fortner and his family and Petitioner was prejudiced thereby.

8.      The trial judge erred by going "off the record" nine times during the trial and Petitioner's appeal rights were prejudiced thereby.

9.      The Assistant Prosecuting Attorney, Jared Divita, committed prosecutorial misconduct by appealing to the sympathy of the jurors during closing arguments and referring to the hours spent investigating this matter by husband, Trooper Divita.

10.     Such other grounds as may arise during the investigation.

(Id.) Subsequently, Petitioner's *habeas* Petition was transferred to Cabell County. On July 25, 2005,

Mr. Albright filed an Amended Petition rising the following grounds for *habeas* relief:

1.      Petitioner received ineffective assistance of counsel from Mr. Spurlock and Mr. Rosinsky in violation of his right to counsel under Sixth and Fourteenth Amendments to the Constitution of the United States of America and the Constitution of the State of West Virginia.

   A.      Trial counsel failed to object to this Court's decision to allow the 13th juror to be present during deliberations.

   B.      Trial counsel failed to request a limiting instruction or move for a mistrial when Matthew Fortner testified that he took two tests to prove that he was telling the truth and this Court overruled an objection stating that Mr. Fortner had the right to expand on this answer.

   C.      Trial counsel was ineffective by withdrawing their Motion to Continue four days before trial.

   D.      Trial counsel failed to object to the discharge of Mr. Nottingham, the juror who arrived late, but had been discharged.

   E.      At post-trial proceedings, trial counsel failed to object to the introduction of affidavits from jurors claiming that the 13th juror

4

played no role in deliberations.

    F.    Trial counsel failed to object when the trial court went off record nine times during the course of the trial.

    G.    Trial counsel failed to object to the giving of State's instruction Nos. 3 and 11. The giving of those instruction were error and the [Petitioner] was prejudiced thereby both at trial on appeal.

    H.    Cumulative errors committed by Petitioner's trial counsel substantially prejudiced him and impacted the outcome.

2.    The Prosecuting Attorney and the juror, Brenda Foster, failed to disclose to the [Petitioner] that Brenda Foster's son, Michael Foster, was under Indictment in the Circuit Court of Cabell County at the time of [Petitioner's] trial.

(Id., pp. 107 - 128.) Respondent filed an Answer on December 21, 2005. (Document No. 11-2, p. 5.) By Order entered on July 16, 2007, Mark McMillian and James Cagle were substituted as counsel for Petitioner. (Id.) On May 14, 2009, Mr. Albright filed his second Amended Petition rising the following grounds for *habeas* relief:

1.    The Petitioner has been deprived of Due Process of Law as guaranteed by the West Virginia Constitution, Article 3, Section 10 and the U.S. Constitution, Amendments 5 and 14. More particularly, exculpatory evidence about a co-accused who became a key State's witness that was not disclosed.

2.    The Petitioner was further deprived of his fair trial rights which secure a petit jury that is free of bias or prejudice consistent with the requirements of Due Process of Law. More particularly, a member of the petit jury had a son who was then under indictment for 2nd degree sexual assault and kidnapping in Cabell County.

3.    The Petitioner's right to effectively cross-examine and to confront the witnesses who appeared against him was contravened in violation of the West Virginia Constitution, Article 3, Section 14 and the U.S. Constitution, Amendments 6 and 14. More particularly, witnesses were consistently permitted to testify in response to the prosecution's questions concerning the contents contained in out of court written statements and provided hearsay testimony.

4.    The Petitioner's right under West Virginia Constitution, Article 3, Section 5 were violated by the disparity of his sentence and treatment of his case when compared to that of his co-accused.

5.    The cumulative effect of the following transgressions constitute a violation of Due Process of Law as the same deprived the Petitioner of a fair trial:

    a.    The violation of Evidence Rule 404(b) and prevailing precedent which requires a hearing, evidentiary showing and concomitant finding in advance of the evidence being offered.

    b.    The excessive use of improper questions and testimony from State's witnesses designed to bolster the credibility of other State's witnesses in violation of Rule 608, West Virginia Rule of Evidence.

    c.    The improper gathering, submission, and consideration of juror affidavits in contravention of Rule 606(b) of the West Virginia Rules of Evidence.

6.    The presence of an alternate or 13th juror in verdict deliberations violated the requirements of West Virginia Constitution, Article 3, Section 14, which plainly commands a "jury of twelve."

(December 11-1, pp. 130 - 139.) An omnibus hearing was conducted on March 17, 2010, on the sole issue of whether Petition was entitled to *habeas* relief based upon the actions of a juror. (Document No. 11-2, p. 2.) By "Amended Order" entered on April 12, 2010, Circuit Court Judge Dan O'Hanlon denied Petitioner's *habeas* Petition. (Id., pp. 2 - 12.) Subsequently, Petitioner, by counsel, Mr. McMillian and Mr. Cagle, filed a Motion for Reconsideration. (Id., p. 14.) On December 14, 2010, an omnibus hearing was conducted in consideration of all remaining grounds for relief and for reconsideration of the non-impartial juror issue. (Id.) By Order entered on January 7, 2011, Circuit Court Judge John L. Cummings granted Petitioner's *habeas* Petition based upon the issue of a non-impartial juror. (Id., pp. 14 - 27.)

On March 1, 2011, the State filed their Notice of Appeal concerning the Circuit Court's decision granting Petitioner's *habeas* Petition. (Id., pp. 29 - 38. ) On June 13, 2011, the State filed

its brief raising the following grounds:

1.   The lower court was clearly erroneous in several material factual findings: that Assistant Prosecuting Attorney Joe Martorella, who was the prosecutor in a case involving the juror's son, was also an assistant prosecutor in [Petitioner's] case; that the juror at issue was "quite likely" to have been struck for cause at trial had she made certain disclosures; and that during voir dire members of the jury pool "approached the presiding judge in a sidebar."

2.   The lower court erred in concluding that *State v. Dellinger*, 225 W. Va. 736, 696 S.E.2d 38 (2010), mandated a finding of juror bias in [Petitioner's] case.

3.   The lower court erred in concluding that *State v. Dellinger*, 225 W. Va. 736, 696 S.E.2d 38 (2010), mandated a finding that the [Petitioner] was prejudiced by the juror's participation.

4.   Any error with respect to seating the juror at issue was harmless.

(Id., pp. 40 - 71.) Petitioner, by counsel, Mr. Cagle, filed his Brief and Cross-Assignment of Error

arguing the following assignments of error:

1.   The lower court committed prejudicial error when it misinterpreted the meaning of "person" in West Virginia Code § 56-6-14, which addresses juror disqualification.

2.   The lower court further committed prejudicial error when it denied Respondent any right of review and discovery of exculpatory material in the form of mental health records of his chief accuser co-defendant Matthew Fortner.

(Id., pp. 73 - 113.) The State filed its Reply Brief and Response to Cross-Assignments of Error on

September 2, 2011. (Document No. 11-3, pp. 2 - 24.) By Per Curiam Opinion filed on June 1, 2012,

the West Virginia Supreme Court of Appeals reversed the decision of the Circuit Court entered on

January 7, 2011, and remanded the case back to the Circuit Court for further proceedings with regard

to any unresolved *habeas* issues. (Document No. 1-2, pp. 2 - 14.); Coleman v. Brown, 229 W. Va.

227, 728 S.E.2d 111 (2012). Specifically, the West Virginia Supreme Court identified two remaining

*habeas* issues to be considered by the Circuit Court: (1) Whether the failure to disclose the mental

health records of a trial witness, who gave substantial trial testimony implicating the defendant in this case caused the defendant to not have a fair trial; and (2) Whether pursuant to W. Va. Code § 56-6-14, the Court should have disqualified one of the jurors and the Court's failure to do so caused the defendant to not have a fair trial. (Id.)

On October 23, 2012, Petitioner filed a Motion for New Trial in the Circuit Court of Cabell County. (Document No. 11-3, pp. 26 - 32.) By Order entered on October 23, 2013, the Circuit Court of Cabell County denied Petitioner's Motion for New Trial. (Id.) By Order entered on January 9, 2014, the Circuit Court of Cabell County denied Petitioner's remaining *habeas* issues. (Id., pp. 34 - 38.) Subsequently, Petitioner, by counsel, Mr. Cagle, filed his appeal with the West Virginia Supreme Court. (Id., pp. 40 - 59.) On May 9, 2014, Petitioner filed his Brief arguing the following assignments of error:

1.    The Court erred when it denied this Petitioner's Motion for New Trial. That motion was supported by the sworn deposition testimony of a person who informed counsel for the State that on Matthew Fortner had stated on multiple occasions that he (Fortner) had fired the shots which killed the victims for which Mr. Brown stand convicted. Fortner was the State's chief trial witness against this Petitioner.

2.    The Court further erred when it concluded that Matthew Fortner's extensive mental health records do not constitute exculpatory or impeachment evidence which the State had the duty to investigate when they become aware of the history and thereafter provide notice of the same to defense counsel.

3.    The Court further erred by concluding that a juror who was both the mother of one scheduled for trial in the same term of Court as Mr. Brown and who was also liable on the bond if her son failed to appear is not a disqualified juror under the terms of W. Va. Code 56-6-14.

(Id.) Respondent filed his Brief in Opposition on June 18, 2014. (Id., pp. 61 - 73.) On July 14, 2014, Petitioner filed his Reply. (Id., pp. 75 - 84.) By Memorandum Decision filed on November 21, 2014, the West Virginia Supreme Court affirmed the Circuit Court's order denying Petitioner's Motion

for a New Trial and *habeas* petition (Document No. 1-2, pp. 15 - 19.); <u>Brown v. Coleman</u>, 2014 WL 6607517 (W.Va. Nov. 21, 2014).

**3.      Federal *Habeas* Proceedings:**

On January 28, 2015, Petitioner, an inmate at Mount Olive Correctional Complex ["MOCC"], by counsel, Mr. Cagle, filed his Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody. (Document No. 1.) Petitioner alleges the following grounds for *habeas* relief:

1.      The Petitioner was denied his right to a trial by an impartial, objective jury as guaranteed by the 6th and 14th Amendments to the U.S. Constitution.

2.      The Petitioner was denied Due Process of Law as guaranteed by the 5th and 14th Amendments to the U.S. Constitution in that exculpatory evidence concerning the State's primary witness against him was not disclosed as is required.

3.      The cumulative effects of the errors made by Courts during the trial and appeal of [Petitioner's] case have infringed upon his fair trial rights and his appeal rights under Due Process of Law and as guaranteed by the 5th, 6th, and 14th Amendments to the U.S. Constitution.

4.      The decisions of the West Virginia Supreme Court of Appeals contravene Due Process of Law in several particulars. First, the Court's treatment of the extra juror who was in attendance at deliberations and the unchallenged, but unqualified, juror Foster contravene the requirements of jury comprised of twelve qualified jurors. Second, the Court's holding that to award a new trial based upon newly discovered evidence the proponent of the new evidence must show that the evidence will produce an opposite result establishes a requirement which based on an unconstitutionally vague standard. Third, the Court, by relying upon "facts" which are contrary to the actual record in [Petitioner's] case deprived Mr. Brown of his right to a fair appeal.

(<u>Id.</u>)

As Exhibits, Petitioner attached the following: (1) A copy of the West Virginia Supreme Court of Appeals' Per Curiam Opinion dated May 1, 2001, affirming Petitioner's convictions,

reversing his sentence of consecutive life terms, and remanding for the preparation of a presentence report (Document No. 1-1.); State v. Brown, 210 W.Va. 14, 552 S.E.2d 390 (2001); (2) A copy of the West Virginia Supreme Court of Appeals' Per Curiam Opinion dated June 1, 2012, reversing the Circuit Court's granting of Petitioner's *habeas* petition and remanding for further proceedings with regarding to any unresolved *habeas* issues (Document No. 1-2, pp. 2 - 13.); Coleman v. Brown, 229 W.Va. 227, 728 S.E.2d 111 (2012); and (3) A copy of the West Virginia Supreme Court of Appeals' Memorandum Decision dated November 21, 2014, affirming the Circuit Court's denial of Petitioner's Motion for New Trial and denial of Petitioner's *habeas* petition (Id., pp. 15 - 19.); Brown v. Coleman, 2014 WL 6607517 (W.Va. Nov. 21, 2014).

By Order entered on February 23, 2015, the undersigned directed Respondent to show cause, if any, why Petitioner's Petition should not be granted. (Document No. 6.) On May 27, 2015, in response to the Court's Order, Respondent filed his Answer, Motion for Summary Judgment and Memorandum in Support thereof with Exhibits. (Document Nos. 10, 11, 14, and 16.)

As Exhibits, Respondent attaches the following: (1) A copy of Petitioner's direct appeal petition as filed with the West Virginia Supreme Court on March 13, 2000 (Document No. 11-1, pp. 2 - 62); (2) A copy of Respondent's Response Brief as filed with the West Virginia Supreme Court on January 26, 2001 (Id., pp. 64 - 100); (3) A copy of Petitioner's State *habeas* Petition as filed in Case No. 02-C-128 (Id., pp. 103 - 105); (4) A copy of Petitioner's Amended *Habeas* Petition as filed on July 25, 2005 (Id., pp. 107 - 128.); (5) A copy of Petitioner's second Amended *Habeas* Petition as filed on May 14, 2009 (Id., pp. 130 - 139.); (6) A copy of the Circuit Court's "Amended Order" as entered on April 12, 2010, denying Petitioner's *habeas* petition (Document No. 11-2, pp. 2 - 12.); (7) A copy of the Circuit Court's "Order Granting Habeas Corpus Relief" entered January 7, 2011

(Id., pp. 14 - 27.); (8) A copy of the State's Notice of Appeal (Id., pp. 29 - 38.); (9) A copy of the State's Brief as filed with the West Virginia Supreme Court (Id., pp. 40 - 71.); (10) A copy of Petitioner's Brief and Cross-Assignments of Error as filed with the West Virginia Supreme Court (Id., pp. 73 - 113.); (11) A copy of the State's Reply Brief and Response to Cross-Assignments of Error as filed with the West Virginia Supreme Court (Document No. 11-3, pp. 2 - 24.); (12) A copy of the Circuit Court's "Order Denying Motion for New Trial" dated October 23, 2013 (Id., pp. 26 - 32.); (13) A copy of the Circuit Court's "Order Denying Amended Petition for Post-Conviction Habeas Corpus Ad Subjuicienum on Two Remaining Issues" dated January 9, 2014 (Id., pp. 34 - 38.); (14) A copy of Petitioner's Brief as filed with the West Virginia Supreme Court (Id., pp. 40 - 59.); (15) A copy of the State's Brief as filed with the West Virginia Supreme Court (Id., pp. 61 - 73.); (16) A copy of Petitioner's Reply Brief as filed with the West Virginia Supreme Court (Id., pp. 75 - 84.); (17) A copy of Petitioner's trial transcripts (Document Nos. 11-4, 11-5, 11-6, 11-7, 16, and 16-1.); (18) A copy of Petitioner's *habeas* transcripts (Document No. 11-7, pp. 180 - 253 and Document No. 11-8, pp. 1 - 87.); and (19) A copy of Juror Brenda Wickline's Deposition and Affidavit (Document No. 11-8, pp. 88 - 157.).

On June 18, 2015, Petitioner filed his Response in Opposition. (Document No. 18.) As Exhibits, Petitioner attaches the following: (1) A copy of pertinent pages from the transcripts of Petitioner's trial; (2) A copy of pertinent pages from Petitioner's *habeas* hearing transcripts dated March 17, 2010; (3) A copy of the Affidavit and Deposition of Juror Brenda Wickline; (4) A copy of the  Circuit Court's Order of Continuance regarding Michael Foster; (5) A copy of Mr. Fortner's State *habeas* Petition; and (6) A copy of pertinent pages from Mr. Fortner's *habeas* hearing. (Document No. 18-1.)

## FACTUAL BACKGROUND

Petitioner was convicted of two counts of first degree murder involving the deaths of Ronald Davis ["Victim Davis"] and Greg Black ["Victim Black"]. Victim Davis and Victim Black were found dead in Victim Black's home on August 17, 1997. At trial, the State presented evidence that Petitioner sold marijuana to the above victims.  (Document No. 12-1, p. 308 and Document No. 12-2, p. 181.) The Petitioner, however, shorted the victims on the amount of marijuana. (Document No. 12-1, p. 307.) Victim Davis discovered the shortage and tracked Petitioner down at Jason Pinkerton's' house. (Id., pp. 307 - 08.) Victim Davis demanded that Petitioner give him "his money or his weed." (Id.) After discussing the issue with Petitioner, the victims left Mr. Pinkerton's house. (Id., p. 308.) Later, Petitioner was unable to find his car keys and blamed the victims for the loss of his keys. (Id.) Shawn Sullivan, Robert Pullen, and Jason Pinkerton testified that Petitioner told them that he was going "get" the victims for taking his car keys. (Document No. 12-1, p. 308 and Document No. 12-2, pp. 11 and 132.) Mr. Sullivan and Mr. Pinkerton further testified that Petitioner was holding a shotgun when he threatened to "get" the victims. (Document No. 12-1, p. 309 and Document No. 12-2, p. 132.) Mr. Pinkerton testified that on August 14, 1997, he overheard Petitioner, Matthew Fortner, and Joey France planning to rob the victims of their illegal drugs. (Document No. 12-2, pp. 133 - 36.) Mr. Fortner testified that Petitioner planned the robbery of the victims' house and around 3:00 a.m. on August 15, 1997, Petitioner, Mr. Fortner, and Mr. France acted on their plan. (Document No. 11-5, pp. 263 - 66.) Mr. Fortner testified that he was carrying his Tech 9 handgun and Petitioner was carrying the Glock 9 handgun. (Id., pp. 266 - 67.) Mr. Fortner explained that Mr. Frances waited in the car while he and Petitioner approached the victims' house. (Id., p. 267.) Petitioner allegedly knocked on the door stating that "This is Mike Brown. I've got the

money that I owe you." (Id.) When Victim Davis opened the door, Petitioner allegedly fatally shot him once in the face. (Id.) Petitioner and Mr. Fortner then allegedly entered the house, and Petitioner proceeded to the bedroom where he shot Victim Black seven times, five of which were fatal shoots to the back and chest.  (Id., p. 268.)

Following the robbery, Petitioner and Mr. Fortner returned to the car with Mr. France. (Id.) Petitioner allegedly gave the Glock 9 to Mr. France and told him to sand the barrel to try to change the ballistics. (Id., p. 269, 328 - 29.) Petitioner, Mr. Fortner, and Mr. France then returned to Mr. Pinkerton's residence where Petitioner told Mr. Mount that they had killed the two people that had taken his keys. (Document No. 12-2, p. 196 and Document No. 11-5, p. 268.) On August 24, 1997, Mr. Fortner, Mr. France, Mr. Pinkerton, and Daniel Gosnay went to Florida. (Document No. 11-5, pp. 269 - 70.) Mr. France and Mr. Fortner were arrested after attempting to rob an elderly couple. (Id., p. 270.) Mr. France and Mr. Fortner were in possession of the Glock 9 and Tech 9 handguns that were used in the murders. (Id.) Ballistics Expert Clarence Lane testified that all of the bullets recovered from the crime scene were fired from the Glock 9 handgun. (Document No. 11-6, p. 14.)

Petitioner presented expert testimony that no gunshot residue was found his in vehicle that was allegedly driven to and from the crime scene. (Id., pp. 26 - 35.) The expert explained that gunshot residue would have been found inside Petitioner's vehicle if he had fired a gun on the date of the murders. (Id.) Petitioner's mother testified that when he arrived home during the early morning hours of August 14, 1997, Petitioner did not act abnormal and did not have blood on his clothing. (Id., pp. 56 - 58.) Petitioner testified that he did not have any involvement in the murders. (Id., pp. 84, 106 - 07.)

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the

prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As to the foregoing, the petitioner carries the burden of proof. Cullen v. Pinholster, 563 U.S. 170, 181, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011)(citation omitted). In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id. When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear

and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003); also see 28 U.S.C. § 2254(e).[1] On this framework, consideration should be given to Respondent's Motion for Summary Judgment.

**Motion for Summary Judgment:**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106

---

[1] Title 28, U.S.C. Section 2254(e) provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

    (A) the claim relies on –
        (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Petitioner's claims, summary judgment is appropriate.

<u>**ANALYSIS**</u>

1.     <u>**Impartial Jury:**</u>

Petitioner contends that he was "denied his right to a trial by an impartial, objective jury as guaranteed by the 6th and 14th Amendments to the U.S. Constitution." (Document No. 1, p. 6.) In support, Petitioner argues that Juror Brenda Wickline (formerly Brenda Foster) was not an impartial, objective juror. (<u>Id.</u>) First, Petitioner complains that Juror Wickline stated she did not respond candidly to questions asked during voir dire because she felt intimidated and embarrassed. (<u>Id.</u>) Specifically, Petitioner claims that Juror Wickline acknowledged that she failed to respond to the trial court's question concerning whether a family member had been a defendant in a criminal case because she was embarrassed. (<u>Id.</u>) Petitioner further states that Juror Wickline acknowledged that her son was a "Defendant who was about to appear, and had appeared, before this same judge." (<u>Id.</u>) Second, Petitioner complains that Juror Wickline failed to acknowledge that she knew an assistant prosecutor. (<u>Id.</u>) Finally, Petitioner arrests that Juror Wickline was not impartial because she

16

"acknowledged seeing her son's attorney with his other client, Mr. Fortner, in the courtroom and saying nothing about it." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's claim should be dismissed because "Petitioner cannot demonstrate that the State Court's adjudication regarding Juror Wickline resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." (Document Nos. 11 and 14.) Specifically, Respondent contends that the West Virginia Supreme Court's "analysis regarding Juror Wickline's non-disclosures demonstrates that no violation of Petitioner's federal rights occurred as '[i]t is clear from the record that Juror Wickline had no interest in the outcome of the [Petitioner's] case.'" (Document No. 14, p. 7.) Concerning Petitioner's claim that Juror Wickline failed to inform the trial court that her son had been indicted and was scheduled to appear before the trial court, Respondent argues that the West Virginia Supreme Court "found that '[i]n reviewing her deposition and her affidavit in their entirety, there is nothing in her responses to indicate that her reasons for non-disclosure resulted from any improper motive or bias toward the [Petitioner].'" (Id., p. 8.) Regarding Petitioner's claim that Juror Wickline failed to notify the trial court that she knew Assistant Prosecutor Joe Martorella, the West Virginia Supreme Court found that "[t]here is no evidence to support a conclusion that Juror Wickline's service on the [Petitioner's] jury created a bias or prejudice toward the [Petitioner] based upon whether she actually 'knew' Martorella." (Id.) Respondent noted that the West Virginia Supreme Court determined that there was no evidence that Juror Wickline was being untruthful. (Id.) Concerning Petitioner's claim the attorney for Juror Wickline's son was also an attorney for a witness in Petitioner' case, the West Virginia Supreme Court found that Juror Wickline "explained that due to the fact that it was a small town, seeing her son's attorney representing another person

in a completely different criminal proceeding was not unexpected and that: 'It didn't dawn on me that would be a problem.'" (Id., pp. 8 - 9.) Respondent, therefore, argues that the West Virginia Supreme Court "was correct in determining both that Juror Wickline 'had no interest in the outcome of the [Petitioenr's] case,' and that '[t]here is no evidence that Juror Wickline's service as a juror deprived the Petitioner of his constitutional rights." (Id., p. 9.)

In Response, Petitioner argues that he was denied his right to a trial by an impartial, objective jury because Juror Wickline's lack of candor during voir dire "plainly had the effect of denying the opportunity to exclude her from the jury by utilizing a for cause challenge." (Document No. 18, p. 2.) Petitioner first contends that the West Virginia Supreme Court failed to follow, or reasonably apply, McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548 (1984). (Id., pp. 4 - 5.) In support, Petitioner contends that the West Virginia Supreme Court failed to even mention McDonough in its decision reversing the Circuit Court's granting of *habeas* relief. (Id., p. 5.) Petitioner complains that "[t]he entire discussion was about West Virginia cases, particularly the effort to distinguish Mr. Brown's case from State v. Dellinger, 225 W.Va. 736, 696 S.E.2d 38 (2010).[2] (Id.) Petitioner contends that the West Virginia Supreme Court incorrectly held that in order establish a violation of the right to a fair trial, Petitioner had to show (1) actual bias by a juror's own admission or by specific facts, or (2) "affirmatively show prejudice." (Id.) Petitioner contends that the above test "is at odds with McDonough." (Id.) Petitioner argues that when "[a]pplying McDonough to [Petitioner's] case the record is quite clear that (1) [Juror] Wickline failed to answer honestly, and (2) had she answered honestly her response would have provided a valid basis for a

_____

[2] *Dellinger* was the case that the Circuit Court relied upon in granting Petitioner's habeas petition.

challenge for cause." (<u>Id.</u>) Petitioner further argues that he can meet his burden to show that Juror

Wickline's "motives for concealing information" or "the reasons that affect the juror's impartiality"

affected the fairness of the trial. (<u>Id.</u>, pp. 5 - 6.) Petitioner states that Juror Wickline acknowledged

that she failed to answer because she felt intimidated about her son coming before the trial judge and

felt ashamed by her son's situation. (<u>Id.</u>, p. 6.) Petitioner further notes that while Petitioner's

criminal trial was ongoing, counsel for Juror Wickline's son appeared before the Circuit Court

requesting a continuance of the trial date for Juror Wickline's son. (<u>Id.</u>) Petitioner, therefore, claims

that the trial for Juror Wickline's son "was March 9, 1999, making it likely the trial scheduled

immediately after [Petitioner's]" trial. (<u>Id.</u>) Petitioner concludes that Juror Wickline was biased

based upon the following: (1) Juror Wickline "concealed material information from the court and

counsel because she did not want to call attention to herself in any way in view of the fact that her

son's appearance before the same Judge for trial was imminent;" and (2) "There was no chance that

[Juror] Wickline would offer any opinion about a verdict which differed from other jurors and there

was certainly no chance that she would lead a discussion against the State's case, if she would even

participate in such a discussion." (<u>Id.</u>)

Next, Petitioner argues that "it is both clear and convincing that the 'facts' which this State's

highest Court determined were unreasonable in light of the evidence which was presented." (<u>Id.</u>, p.

5.) Petitioner asserts that the facts do not support the West Virginia Supreme Court's conclusion that

"nothing in [Juror Wickline's] responses indicate that her reasons for non-disclosure resulted from

improper motive or bias toward [Petitioner]." (<u>Id.</u>, p. 7.) Petitioner argues that the West Virginia

Supreme Court should have determined Juror Wickline to be an incredible witness based upon her

testimony that she did not understand the word "defendant."[3] (Id.) Petitioner notes that Juror Wickline had to understand the word "defendant" because (1) she was listed as the surety in her son's case, and (2) the trial court referred to Petitioner as a "defendant." (Id.)

Regarding Petitioner's above *habeas* claim, the Circuit Court found as follows:

As stated, Juror Wickline maintained her impartiality throughout *voir dire*, her affidavit, and during her deposition and there is nothing in the record to discredit her testimony. It is clear from the record that Juror Wickline had no interest in the outcome of the respondent's case, unlike the juror in the *Dellinger* case. Moreover, there is no evidence in the record from which it could be inferred that Juror Wickline had any actual bias against the respondent or that she "had such a fixed opinion that he or she could not judge impartially the guilt of the defendant." *See* Syllabus Point 4, *Miller*, *supra*. In fact, the only evidence in the record is her assertion, under oath, that she did **not** have any bias. Furthermore, Juror Wickline testified that even if she had been biased, she was more likely to have been sympathetic to the respondent due to the fact that her son had also been arrested and charged with a crime.

Given the absence of actual bias, the [Petitioner] had to "affirmatively show prejudice" to succeed in his contention that his constitutional right to an impartial jury was violated. *See* Syllabus Point 6, *Farmer*, *supra*. Under the facts of this case, and the relevant law, the respondent has failed to show any bias or prejudice resulting from Juror Wickline's participation in this criminal trial. As such, the circuit court wrongly concluded that prejudice to the respondent resulted from the totality of the circumstances." There is no evidence that Juror Wickline's service as a juror deprived the respondent of his constitutional rights. Accordingly, the circuit court's granting of habeas corpus relief in the [Petitioner's] case must be reversed.

(Document No. 1-2, p. 9.)

---

[3] The West Virginia Supreme Court stated as follows (Document No. 1-2, p. 8.): In an affidavit dated August 14, 2009, Juror Wickline explained that when she was asked whether any family members had ever been defendants in a criminal case, she thought the question referred to persons who had already been tried and convicted of a crime, rather than just being charged with a crime. She said she did not believe her son was a 'defendant' because the question was framed in the past tense and did not apply to her son's situation because he had not yet been tried in court. During her subsequent deposition, she further explained: "Well, my first thought was that I thought well, I know he's been charged, but he's innocent until proven guilty. That was my first thought because I thought, you know, he's just been charged. Does that mean he's guilty. Does that mean he's guilty? Is he a defendant . . .."

The Sixth Amendment, made applicable to the State through the Fourteenth Amendment, affords an accused the right to a trial by an impartial jury. The "touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it.'" McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554 104 S.Ct. 845, 78 L.Ed.2d 663 (1984)(citation omitted). The United States Supreme Court has explained that voir dire examination serves to protect the foregoing right "by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges." Id., 646 U.S. at 554, 104 S.Ct. 845. The Supreme Court, however, recognized the following:

> To invalidate the result of a three-week trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination.

Id., 646 U.S. at 555, 104 S.Ct. 845. The Supreme Court, therefore, held that for an accused to obtain a new trial based upon a claim of jury impartiality, the accused "must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." Id., 646 U.S. at 556, 104 S.Ct. 845. The Supreme Court recognized that even though "motives for concealing information may vary, . . . only those reasons that affect a juror's impartiality can truly be said to affect the fairness of trial." Id.; also see Conaway v. Polk, 453 F.3d 585 (4th Cir. 2006)("The inquiry into whether a trial's fairness was affected essentially constitutes a third part, however, as it must be satisfied

before the juror's bias may be proven.")

The Fourth Circuit has recognized that the McDonough test applies "equally to deliberate concealment and to innocent non-disclosure." Conner v. Polk, 407 F.3d 198, 205 (4th Cir. 2005). Regarding the second prong of the McDonough test, "'[t]he category of challenges for cause is limited,' and traditionally, a challenge for cause is granted only in the case of actual bias or implied bias." Jones v. Cooper, 311 F.3d 306, 312 (4th Cir. 2002); also see Person v. Miller, 854 F.2d 656, 664 (4th Cir. 1988)("Challenges for cause are typically limited to situations where actual bias is shown.") To establish actual bias, a party must prove that a juror was not "capable and willing to decide the case solely on the evidence before [him or her]." McDonough, 464 U.S. at 554, 104 S.Ct. at 845. Implied bias "is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." See Person v. Miller, 854 F.2d 656, 664 (4th Cir. 1988), citing Smith v. Phillips, 455 U.S. 209, 221-24, 102 S.Ct. 940, 948-50, 71 L.Ed.2d 78 (1982). Examples of implied bias include "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." Conner, 407 F.3d at 206, citing Smith, 455 U.S. at 222, 102 S.Ct. at 949.

It appears to be undisputed that the McDonough test was clearly established federal law applicable to Petitioner's claim. Petitioner, however, argues that the West Virginia Supreme Court's decision was "contrary to" the foregoing clearly established federal law. In support, Petitioner first contends that the West Virginia Supreme Court's decision is "contrary to" clearly established federal law because the West Virginia Supreme Court failed "to even mention McDonough." (Document

No. 18, p. 5.) The undersigned finds that Petitioner's foregoing argument is misplaced. A state court's failure to cite federal law does not mean that the state court's decision is "contrary to" clearly established federal law. See Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) The Supreme Court has stated that a state court's decision is "contrary to" clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams, 529 U.S. 405-06, 120 S.Ct. 1519. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early, 537 U.S. at 8, 123 S.Ct. at 365. In such cases, a court should "focus[] solely on the result reached, and application of the 'contrary to' prong is necessarily limited to determining whether the state court decision is contrary to a decision reached by the Supreme Court on indistinguishable facts." Reid v. True, 349 F.3d 788, 799 (4th Cir. 2003). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). The undersigned will consider each of Petitioner's claims of juror impartiality in turn.

A.   ***Juror Wickline's Failure to Disclose Regarding her Son:***

Considering the first McDonough factor, the undersigned finds that even assuming Juror Wickline erroneously believed her son was not yet a defendant because he had not be convicted, she did fail to answer a material question during voir dire. The record reveals that Juror Wickline did not respond to the voir dire question concerning whether any family members of jurors had ever

23

been defendants in a criminal case. Although Petitioner disputes Juror Wickline's contention she didn't believe her son was a "defendant" because he had not yet be convicted, the undersigned finds the foregoing to be irrelevant to the first McDonough factor. As stated above, the McDonough test applies "equally to deliberate concealment and to innocent non-disclosure." Conner, 407 F.3d at 205.

Regarding the second McDonough factor, Petitioner must show that a correct response would have provided a valid basis for a challenge for cause. As stated above, a challenge for cause is granted only in the case of actual bias or implied bias. First, the undersigned will consider whether actual bias existed on the part of Juror Wickline. The Court finds that the record supports the West Virginia Supreme Court's finding of no actual bias. The West Virginia Supreme Court determined that "Juror Wickline maintained her impartiality throughout voir dire, her affidavit, and during her deposition and there is nothing in the record to discredit her testimony." (Document No. 1-2, p. 9.) Petitioner challenges the West Virginia Supreme Court's finding that "there is nothing in the record to discredit her testimony." Specifically, Petitioner argues that the West Virginia Supreme Court should have found Juror Wickline to be incredible based upon her testimony that she didn't believe her son to be a "defendant." As stated above, federal *habeas* relief is available if the State Court's decision to deny relief was "based on an unreasonable determination of the facts." "[A] determination on a factual issue made by the State court shall be presumed correct," and the Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." See 28 U.S.C. § 2254(e)(1). The undersigned notes that the West Virginia Supreme Court never made a specific finding that Juror Wickline's testimony concerning her confusion as to whether her son was a "defendant" to be creditable testimony. The West Virginia Supreme Court merely summarized Juror Wickline's testimony regarding the issue and determined "there is nothing in her responses to indicate that her reasons for non-disclosure resulted from any improper motive

or bias toward the [Petitioner]." (Document No. 1-2, p. 8.) The undersigned finds that Petitioner has failed to present "clear and convincing evidence" rebutting the presumption of correctness. Even assuming Juror Wickline should have known her son was classified as a "defendant," Petitioner has presented no evidence that the non-disclosure was the result of bias toward Petitioner.[4] Petitioner's conclusory claim that "[t]here was no chance that Mrs. Wickline would offer any opinion about a verdict which differed from other jurors and there was certainly no chance that she would lead a discussion against the State's case," is without merit. The record reveals that Juror Wickline testified that due to her son's circumstance "if anything, it, I had more, I was more apt to show mercy toward [Petitioner]." (Document No. 11-8, pp. 131-32.) Based on the foregoing, the undersigned finds that Petitioner has failed to provide any evidence rebutting the West Virginia Supreme Court's findings of fact and conclusions of law concerning the lack of actual bias.

Second, the undersigned will consider whether implied bias existed on the part of Juror Wickline. Petitioner argues that bias should be implied based solely upon the fact that Juror Wickline's son had been indicted and had pending criminal proceedings in Cabell County. "The mere fact that the juror's relatives had a history of arrests and jury trials certainly does not reach the high standard need for the implication of bias. Jones v. Cooper, 311 F.3d 306, 312 ("[T]he fact that the juror had relatives who were subject to arrest and jury trials does not give rise to an inference that the juror was biased against the appellant; indeed, arguably, the more common-sense assumption is that a juror with this background would be biased in *favor* of the accused."); *also see*

_____

[4] The record contains no evidence that Juror Wickline knew her son was classified as a "defendant," but intentionally failed to disclose the information. Juror Wickline testified that "I thought until he was really convicted and actually sentenced and actually - - like I said, it was my first experience being involved with the law." (Document No. 11-8, p. 128.) The record, however, does not support a conclusion that Juror Wickline was dishonest or lying during voir dire. (*Id.*, pp. 119-20, 128, 130-31, 142.)

United States v. Ross, 263 F.3d 844, 847 (8th Cir. 2001)(where a juror lied about being accused of felonies and convicted of misdemeanors on her juror questionnaire and during voir dire, "the juror's previous brushes with the law would create a stronger opposite inference – one that she might well be biased in favor of defendants in general"). Thus, the record fails to support a finding of implied bias on the part of Juror Wickline. Accordingly, the undersigned finds Petitioner cannot satisfy the second prong of the McDonough test because Petitioner has failed to show that a correct response would have provided a valid basis for a challenge for cause.

Notwithstanding the foregoing, the undersigned will briefly consider the third McDonough factor. Specifically, whether Juror Wickline's motives for concealing information concerning her son's circumstances affected her impartiality. As discussed above, Juror Wickline explained that she did not respond because she did not believe her son was a "defendant" since he had not yet been convicted of a crime. (Document No. 11-8, pp. 119-20, 128, 130-31, 142.) When questioned as to why she did not error on the side of caution and disclose her son's circumstance, Juror Wickline testified that she felt intimated by the "whole law process" and was embarrassed by her son's circumstances. (Id., pp. 123, 143.) The undersigned finds no evidence that Juror Wickline's motive for failing to disclose her son's circumstances affected her impartiality.[5] Based upon the foregoing, the undersigned finds that Petitioner fails to satisfy the McDonough test. Accordingly, the West Virginia Supreme Court's conclusion that Petitioner's Sixth Amendment rights were not violated based upon Juror Wickline's failure to disclose her son's circumstances was not "contrary to" federal law.

---

[5] Additionally, Juror Wickline testified that she felt she was impartial during Petitioner's trail. (Document No. 11-8, p. 131.)

**B.**     *Juror Wickline's Failure to Disclose Regarding Assistant Prosecutor Martorella:*

Considering the first McDonough factor, the undersigned finds that even assuming Juror Wickline erroneously believed she did not "know" Assistant Prosecutor Martorella, she did fail to answer a material question during voir dire. The record reveals that Juror Wickline did not respond to the voir dire question concerning whether jurors knew any of the named members of the prosecuting attorney's office. Although Juror Wickline explained that she did not respond because she only "knew" Assistant Prosecutor Martorella by name, the undersigned finds that she did fail to respond. As stated above, the McDonough test applies "to innocent non-disclosure." Conner, 407 F.3d at 205.

Regarding the second McDonough factor, Petitioner must show that a correct response would have provided a valid basis for a challenge for cause. The undersigned, therefore, will consider whether actual or implied bias existed on the part of Juror Wickline. The undersigned has thoroughly reviewed the record and cannot find that the West Virginia Supreme Court's finding of no actual bias was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts. Specifically, the West Virginia Supreme Court determined that "Juror Wickline maintained her impartiality throughout voir dire, her affidavit, and during her deposition and there is nothing in the record to discredit her testimony." (Document No. 1-2, p. 9.) Next, the undersigned will considered whether an implied bias existed. Although the record reveals that the criminal case involving Juror Wickline's son was assigned to Assistant Prosecutor Martorella, Assistant Prosecutor Martorella was not a prosecutor in Petitioner's case. (Document No. 11-8, pp. 47 - 48.) As stated above, implied bias "is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the

27

circumstances." The West Virginia Supreme Court determined that "Juror Wickline had no interest in the outcome of the [Petitioner's] case." (Document No. 1-2, p. 9.) Additionally, the undersigned's review of the record fails to indicate that Juror Wickline's knowledge of Assistant Prosecutor Martorella, who was not a prosecutor in Petitioner's case, rose to the level of extreme and exceptional cases where bias is conclusively implied. See Treesh v. Bagley, 612 F.3d 424, 437-38 (6th Cir. 2010)(bias is not implied where a juror had taken a student-teacher relationship with the prosecutor). Finally, Petitioner fails cite any Supreme Court precedent recognizing implied bias based on the foregoing circumstances. Accordingly, the undersigned finds no implied bias on the part of Juror Wickline. The undersigned, therefore, finds Petitioner cannot satisfy the second prong of the McDonough test because Petitioner has failed to show that a correct response would have provided a valid basis for a challenge for cause.

Notwithstanding the foregoing, the undersigned will briefly consider the third McDonough factor. Specifically, whether Juror Wickline's motives for failing to disclose information concerning Assistant Prosecutor Martorella affected her impartiality. As discussed above, Juror Wickline testified that she felt the voir dire question was asking if jurors personally "knew" the named members of the prosecuting attorney's office. (Document No. 11-8, p. 135.) Juror Wickline stated that she failed to respond because "I wasn't acquainted, but I knew the name Joe Martorella." (Id., p. 112.) Juror Wickline testified that she responded to a voir dire question regarding whether jurors "knew" named witnesses because she personally knew one of the witnesses. Specifically, Juror Wickline explained as follows:

> I see Cheryl Seplocha. I knew her personally. You know, Joe Martorella was just a person who is a name, you know, nobody I really knew. I mean, do you know what I'm saying? I didn't know him personally, but Cheryl I knew personally. She was a, you know, I had known her for years. She was my high school gym teacher. I had known her in personal relationships.

28

(Id., p. 116.) The undersigned finds no evidence that Juror Wickline's motive for failing to disclose her knowledge of Assistant Prosecutor Martorella affected her impartiality. Based upon the foregoing, the undersigned finds that Petitioner fails to satisfy the McDonough test. Therefore, the West Virginia Supreme Court's conclusion that Petitioner's Sixth Amendment rights were not violated based upon Juror Wickline's failure to disclose her knowledge of Assistant Prosecutor Martorella was not "contrary to" federal law.

### C.      *Juror's Wickline's Knowledge of a Witness's Attorney:*

Finally, Petitioner argues that Juror Wickline was not impartial because her son's attorney was also an attorney for a State's witness in Petitioner's trial. Petitioner argues that four days into Petitioner's trial, Juror Wickline failed to inform the trial court that an attorney representing a witness for the State was also an attorney for her son. Unlike the foregoing claims, Petitioner does not argue that Juror Wickline omitted or failed to disclose the foregoing during voir dire. Therefore, the McDonough test does not apply. A petitioner, however, may assert a general Sixth Amendment claim challenging the impartiality of a juror based upon circumstances occurring outside voir dire. Fitzgerald v. Greene, 150 F.3d 357, 362-63 (1998), citing McDonough, 464 U.S. at 556-57, 104 S.Ct. at 850("the Court's holding [did] not . . . foreclose the normal avenue of relief available to a party who is asserting that he did not have the benefit of an impartial jury.") In his concurrence in McDonough, Justice Blackmun stated that "regardless of whether a juror's answer is honest or dishonest, it remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias, or in exceptional circumstances, that the facts are such that bias is to be inferred." McDonough, 464 U.S. at 556-57, 104 S.Ct. at 850(Blackmun concurring); also see Smith, 455 U.S. at 215, 102 S.Ct. at 945("This Court has long held that the remedy for allegations of juror partiality is a hearing in which

29

the defendant has the opportunity to prove actual bias). The record clearly reveals that the State court afforded Petitioner a hearing in which he had the opportunity to prove actual bias. The undersigned has thoroughly reviewed the record and cannot find that the West Virginia Supreme Court's finding of no actual bias to be contrary to a reasonable application of federal law, or based on an unreasonable determination of facts. The West Virginia Supreme Court found as follows:

> Juror Wickline further explained that due to the fact that it was a small town, seeing her son's attorney representing another person in a completely different criminal proceeding was not unexpected and that: "It didn't dawn on me that would be a problem." Having reviewed Juror Wickline's deposition, nothing whatsoever indicates that she had expressed any bias or prejudice toward the respondent or that she could not impartially judge his guilt.

(Document No. 1-2, p. 9.) Petitioner has failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. Additionally, the undersigned's review of the record does not indicate that Juror Wickline's knowledge of the attorney for the State's witness rose to the level of those extreme and exceptional cases where bias is conclusively implied. Accordingly, the West Virginia Supreme Court's conclusion that Petitioner's Sixth Amendment rights were not violated based upon Juror Wickline's failure to disclose her knowledge of the attorney for the State's witness was not "contrary to" federal law.

Based upon the foregoing, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted as to Ground One.

**2.**      <u>**Failure to Disclose Exculpatory Evidence:**</u>

In his Petition, Petitioner argues that he was "denied Due Process of Law as guaranteed by the 5th and 14th Amendments to the U.S. Constitution in that exculpatory evidence concerning the State's primary witness against him was not disclosed as is required." (Document No. 1, p. 7.) Petitioner argues that the State improperly withheld evidence that Mr. Fortner, Petitioner's co-

defendant and the State's primary witness, had a "long history of sexual, physical, and emotional abuse by family members" and had been placed in drug treatment facilities several times prior to the murders. (Id.) Petitioner contends that the "records of counsel for sex abuse were requested by [Petitioner's] trial counsel before his trial," but the State "claimed an absence of awareness of these records" and "objected to any use or review by the defense of such records." (Id.) Petitioner contends that "[t]he record of other hearings reflected that Judge O'Hanlon was not only aware [that Mr. Fortner was referred to psychotherapy]  as it was part of the pre-trial release, but he was aware of the State's strategy for keeping the information away from defense counsel." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's claim should be dismissed because "Petitioner cannot demonstrate that the decisions from the West Virginia Supreme Court of Appeals finding 'no error in the Circuit Court's ruling that the evidence does not constitute exculpatory evidence' is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." (Document Nos. 11 and 14.) Respondent notes that Petitioner relies upon "Fortner's testimony at his own habeas proceeding in support of his claim." (Document No. 14, p. 10.) Respondent notes that the West Virginia Supreme Court appropriately determined that there was no evidence that Mr. Fortner was under the influence of drugs at the time he testified because Mr. Fortner testified that "he had been off of drugs for some time prior to petitioner's trial." (Id.) Additionally, Respondent asserts that the West Virginia Supreme Court properly found that Petitioner failed "to show how Mr. Fortner's mental health records might tend to establish Petitioner's innocence." (Id.) Finally, Respondent argues that West Virginia Supreme Court properly determined that Petitioner failed to show that "Mr. Fortner's mental health records were suppressed by the State or that the evidence was material." (Id.)

In Response, Petitioner argues that he was denied his right to "due process at law as guaranteed by the 5th and 14th Amendments to the U.S. Constitution in that exculpatory evidence concerning the State's primary witness against him was not disclosed as is required." (Document No. 18, p. 8.) Petitioner argues that Mr. Fortner was granted *habeas* relief based upon his claim that trial counsel acted ineffectively in failing to investigate Mr. Fortner's his "long history of sexual, physical and emotional abuse by family members" and his placement in drug treatment facilities. (Id., pp. 8 - 9.) Petitioner notes that Mr. Forner's plea occurred on February 19, 1999, "just a few days before the start of [Petitioner's] trial." (Id., p. 12.) Petitioner asserts that "the Supreme Court has chosen to cherry pick from among the 'facts' which are neither clear nor frankly believable and are clearly self-serving." (Id.) Petitioner contends that "when Fortner mentions his different statements and being 'higher than a kite' has says he then 'went over everything back there in Chris's office about exactly what he wanted me to testify to.' One can only speculate about the differing statements."[6] (Id.) Citing transcripts from Mr. Fortner's second guilty plea, Petitioner notes that the Circuit Court stated that Mr. Fortner's mental health records "might have required the Court

---

[6] Petitioner misconstrues the record when he indicates that Mr. Fortner stated he was "higher than a kite" at the time of the trial and allowed the Prosecutor to instruct him as what to testify. During Mr. Fortner's *habeas* hearing, Mr. Fortner acknowledged that he had been off drugs for "several months" prior to testifying at Petitioner's trial. (Document No. 18-1, p. 56.) Mr. Fortner's testimony further reveals that he referring to his condition on the date of the murders when stating that he was "higher than a kite." Specifically, the record reveals the following testimony:

> Q.    Okay. But you don't remember at the time whether or not you were out petting a dog or your were in the back seat or you were in the front seat or whether you drove?
> A.    I's hard to tell.
> Q.    Okay. But you don't remember that?
> A.    I was higher than a kite. Any some things seem like they're there. Some things seem like they're not. I mean I just - - there's still some confusion in my own mid about it.

(Document No. 18-1, p. 57.) The record further reveals that during Petitioner's criminal trial, counsel  thoroughly questioned Mr. Fortner regarding his condition and drug use on the day of the murders. (Document No. 11-5, pp. 250 - 259, 299, 358.)

to allow the information in as impeachment which I did keep out of the trial at the State's request."

(Id., p. 13.) Petitioner argues that the foregoing "flies in the face of the Supreme Court's finding including the conclusion that nothing shows that the mental health records were suppressed or that they were material." (Id.) Petitioner asserts that "the Fortner records were consciously suppressed from defense counsel." (Id.) Petitioner argues that the "records were material as they would cast doubt on Fortner's ability to recall such that the trial's outcome was affected." (Id.) Finally, Petitioner argues that the Mr. Fortner's award of *habeas* relief based on "his lawyer's failure to gather and review his mental health records considered with the efforts of both the State and the trial court to 'keep them out' because they might be used as impeachment demonstrates that the decision is clearly based on an unreasonable determination of the facts considering the evidence presented."

(Id.)

Regarding Petitioner's above *habeas* claim, the West Virginia Supreme Court found as follows:

> In addition to Mr. Fortner's testimony about his criminal past, he testified that he had been off of drugs for some time prior to petitioner's trial, so the record is devoid of evidence that Mr. Fortner was under the influence of drugs at the time he testified at trial. Petitioner fails to show how Mr. Fortner's mental health records might tend to establish petitioner's innocence. Therefore, we find no error in the circuit court's ruling that the evidence does not constitute exculpatory evidence. Further, we find that petitioner has failed to satisfy the standards set forth in *Youngblood*, as petitioner has not shown that the mental health records were suppressed by the State or that the evidence was material, particularly in light of the fact that petitioner had the opportunity to examine Mr. Fortner regarding his criminal and mental health history to the extent that the trial court may have permitted such testimony. Therefore, we find that the circuit court did not err in denying petitioner's petition for habeas relief on this ground.

(Document No. 1-2, pp. 17 - 18.)

It is well established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). In <u>United States v. Agurs</u>, 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976), the Supreme Court clarified the prosecutor's duty to require disclosure of favorable evidence to the defense, even if not requested. This duty encompasses impeachment evidence, exculpatory evidence, and evidence "known only to police investigators and not to the prosecutor." <u>Kyles v. Whitley</u>, 514 U.S. 419, 438, 115 S.Ct. 1555, 1567-68, 131 L.Ed.2d 490 (1995). However, a prosecutor does not have a "constitutional duty routinely to deliver his entire file to defense counsel." <u>United States v. Agurs</u>, 427 U.S. at 111, 96 S.Ct. at 2401. If the prosecution suppresses <u>Brady</u> material, the disclosure of which would have in all reasonable probability resulted in a different outcome, then the mandates of due process are violated. See <u>United States v. Bagley</u>, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); <u>Brady v. Maryland</u>, 373 U.S. at 87, 83 S.Ct. at 1196-97. To state a valid <u>Brady</u> claim therefore, the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching, [the] evidence must have been suppressed by the State, either willfully or inadvertently," and the evidence must have been material to the verdict such that its suppression prejudiced the defense. <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999); <u>Monroe v. Angelone</u>, 323 F.3d 286, 299-300 (4th Cir. 2003). Suppressed evidence is "information which had been known to the prosecution but unknown to the defense." <u>Agurs</u>, 427 U.S. at 103, 96 S.Ct. 2392. Undisclosed exculpatory or impeachment evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Kyles</u>, 514 U.S. at 434, 115 S.Ct. at 1566. A "reasonably probability" is shown when the suppression of evidence "undermines confidence in the outcome of the trial." <u>Id.</u> at 435, 115 S.Ct. at 1566. The question of materiality must be considered "collectively, not item by item." <u>Id.</u> at 436,

115 S.Ct. at 1567.

The undersigned finds that Petitioner's above claim is without merit because there is no evidence that the West Virginia Supreme Court's determination was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts. Even assuming Petitioner could establish that the mental health records constituted exculpatory or impeachment evidence, Petitioner cannot establish that the State suppressed the evidence or that the evidence was material. First, the undersigned will consider the West Virginia Supreme Court's determination that "petitioner has not shown that the mental health records were suppressed by the State." Petitioner argues that the "Supreme Court has chosen to cherry pick from among 'facts' which are neither clear nor frankly believable and are clearly self-serving." (Document No. 18, p. 12.) A review of the record, however, reveals that Petitioner is the one who is cherry picking excerpts from the record in support of his claim that the State suppressed Mr. Fortner's mental health records. Specifically, Petitioner argues that during Mr. Fortner's *habeas* hearing "this is what the trial court said about that when referring to the damaging information contained in the *Prestera mental health records* which: 'might have required the Court to allow the information in as impeachment which I did keep out of the trial at the State's request.'" (Id., pp. 12 - 13)(emphasis added). A complete review of the record does not support Petitioner's above argument. During Mr. Fortner's plea hearing that was held subsequent to the Circuit Court granting Mr. Fortner's *habeas* petition based upon ineffective assistance of counsel, the Circuit Court summarized as follows: "And I believe that Mr. Booten in good faith thought he was protecting the guy at the time by not getting some damaging information that might have hurt him, might have required the Court to allow that information in as impeachment, which I did keep out of the trial at the State's request." (Document No. 18-1, p. 68.) A review of transcripts from Mr. Fortner's *habeas* hearing, in conjunction with the transcripts of his

subsequent plea hearing, reveals that the Circuit Court was referring to "keep[ing] out" portions of

Mr. Fortner's journal wherein Mr. Fortner wrote about the sexual abuse by his aunt. The transcripts

from Mr. Fortner's *habeas* hearing reveals the following testimony:

> Q.     And, in fact, if you recall - - if you read in the transcripts and stuff, I'm sure
> you remember you kept a diary which was seized. An there was even some
> reference to that abuse in the diary?
>
> A.     Yeah.
>
> Q.     Which we were able on your behalf to keep out at trial to spare you having
> to talk about all that during your testimony. Do you recall that?
>
> A.     Yes, I do.

(Document No. 18-1, p. 49.) The record further reveals that the Circuit Court was only referring Mr.

Fortner's Prestera mental health records when stating that trial counsel thought "he was protecting

[Mr. Fortner] at the time by not getting some damaging information that might have hurt him." The

transcripts from Mr. Fortner's *habeas* hearing reveals the following testimony:

> THE COURT:     But I mean the knowledge that there were such records came
> to your attention because you discussed them with him and/or
> his family?
>
> THE WITNESS:   Yes.
>
> THE COURT:     And you said that you came to the conclusion based on
> something that one of the counselors told you that there was
> something that might be damaging if you actually got the
> report and that that's why you made the strategic decision to
> call off the search for these things?
>
> THE WITNESS:   Yes. And I'm trying to remember what that damaging
> information is. And I would just simply have to guess
> whether it was damaging towards Matt and what he was
> portraying or damaging because it was - - damaging because
> it revealed family secrets that they didn't want to be known.

(Id., p. 61.) The undersigned further notes that unlike Petitioner, Mr. Fortner did not assert as part

of his *habeas* claim that the State improperly withheld Mr. Fortner's exculpatory, mental health records. Mr. Fortner's *habeas* claim was based upon trial counsel's failure to investigate and obtain copies of his mental health records from Prestera Mental Health Center and St. Mary's Hospital. (Document No. 18-1, pp. 20 - 29.) Based upon the foregoing, the undersigned finds no indication in the record that Mr. Fortner's mental health records were suppressed by the State. Importantly, the record reveals that Mr. Fortner's journal was produced to Petitioner's trial counsel. (Document No. 18-1, p. 17.)

Even assuming the mental health records were suppressed, the undersigned finds that Petitioner's cannot establish that the mental health records were material. The West Virginia Supreme Court determined that Petitioner failed to show that the "evidence was material, particularly in light of the fact that petitioner had the opportunity to examine Mr. Fortner regarding his criminal and mental health history to the extent that the trial court may have permitted such testimony." (Document No. 1-2, pp. 17 - 18.) First, the undersigned notes that Mr. Fortner was granted *habeas* relief because his trial counsel failed to investigate and obtain a copy of Mr. Fortner's mental health records after Mr. Fortner "told his attorney that he was a drug addict and had a history of treatment for drug abuse, including a voluntary admission to St. Mary's Hospital for in-house treatment for drug abuse, and that he was attending Narcotics Anonymous classes four times per week and going to Alcoholics Anonymous meetings." (Document No. 18-1, pp. 20 - 29.) The Circuit Court, however, made no finding concerning Mr. Fortner's mental competency.[7] (Id.) During

---

[7] As part of his Losh List, Mr. Fortner asserted involuntary guilty plea, mental competency at the time of the crime, and mental competency at the time of the trial." (Document No. 18-1, p. 41.) During the *habeas* hearing, however, Petitioner indicated that he only wished to assert his claim of ineffective assistance of counsel and was only asserting the foregoing grounds as not to waive those grounds in the event a new trial was granted based upon his claim of ineffective assistance of counsel. (Id., pp. 54 - 56.)

Petitioner's trial, Mr. Fortner was thoroughly questioned regarding his history of drug and alcohol abuse (Document No. 11-5, pp. 250 - 259, 299, 358), prior drug convictions (Id., p. 295), admission to rehabilitation (Id., p. 254), and multiple inconsistent statements regarding the murders (Id., pp. 270 - 274, 290, 314 - 316, 328 - 336, 339, 359 - 382, and 387). Mr. Fortner was specifically questioned concerning his extensive drug use on the day of the murders. (Id., pp. 264 - 267, 370, 373, 378.) Mr. Fortner was also questioned concerning his journal entries.[8] (Id., pp. 302, 355 - 358.) Specifically, Petitioner was questioned concerning his use of drugs to control people, his own violence, his tenancy for lying, his mental health concerns, and his obsession with drugs. (Id.) Finally, Mr. Fortner was questioned concerning his plea deal of count of murder in exchange for his testimony against Petitioner. (Id., pp. 248 - 249, 306, 388.) The undersigned, therefore, finds no reasonably probability that the alleged suppression of Mr. Fortner's mental health records "undermined confidence in the outcome of the trial." Based on the foregoing, Petitioner has failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. Therefore, Respondent is entitled to summary judgment regarding the above claim of ineffective assistance of counsel.

**3.    Cumulative Errors:**

In his Petition, Petitioner argues that "[t]he cumulative effects of the errors made by Courts during the trial and the appeal of [Petitioner's] case have infringed upon his fair trial rights and his appeal rights under Due Process of Law and as guaranteed by the 5th, 6th, and 14th Amendments to the U.S. Constitution." (Document No. 1.) In support, Petitioner states as follows: "an alternate juror

---

[8]   The trial court determined that the journal entries concerning Mr. Fortner being sexual abused by his aunt and his derogatory references to African Americans were irrelevant. (Exhibit 467, pp. 5 - 8.)

sat in on the jury's deliberations; various witnesses were allowed to testify as to hearsay and double hearsay about matters which were incriminating of [Petitioner] including uncharged conduct; a police witness was allowed to testify to the 'truthfulness' of statements made by others; the trial court went off the record some nine (9) times including times when the court addressed some of the aforementioned matters; juror affidavits were offered by the State to the Supreme Court of Appeals and considered by the Court without regard to the applicable Rules and without being subjected to prior cross-examination by counsel." (Id., p. 8.) Petitioner acknowledges that "[n]o challenge was presented to the Supreme Court of Appeals about its use of the juror affidavits." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's claim should be dismissed because "Petitioner cannot demonstrate that the West Virginia Supreme Court of Appeal's decision rejecting his cumulative error claim was either contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent." (Document Nos. 11 and 14.) First, Respondent asserts that Petitioner concedes that no challenge was made to the West Virginia Supreme Court concerning the use of juror affidavits, "and thus, this facet of Petitioner's claim in Ground Three is not appropriate for federal review." (Document No. 14, p. 11.) Second, Respondent argues that "Petitioner does not explain how these trial errors individually or cumulatively deprived him a federally guaranteed constitutional right, nor does he cite any United States Supreme Court decisions holding that cumulative trial errors which have not been shown to have had a 'substantial and injurious effect or influence in determining the jury's verdict' can form any basis for federal habeas relief." (Id.)

In Reply, Petitioner first notes that the cumulative error doctrine was asserted in Petitioner's first appeal. (Document No. 18, p. 14.) Petitioner states that in addressing his argument, the West Virginia Supreme Court "ruled that the presence of the alternate juror at deliberations, the

39

[Petitioner's] absence from a discussion concerning jury instructions, off record discussions with counsel and allowing for additional peremptory strikes were all harmless errors and that the errors were not numerous." (Id.) Petitioner, however, contends that Petitioner's "absence from the charge conference and the off record discussions with counsel, offend [Petitioner's] right to be present at all critical stages of trial and to have a trial record for appeal, therefore they concern a constitutional right." (Id., p. 15.) Next, Petitioner argues that the West Virginia Supreme Court improperly "found that a clearly disqualified and biased juror who had been dishonest in voir dire could participate in the verdict." (Id.) Third, Petitioner claims that the West Virginia Supreme Court's "ruling that the denial of access to Fortner's mental health records was not a violation of due process under Brady and its progeny represents another constitutional error." (Id.) Petitioner, therefore, concludes that the "proceedings below contained multiple errors which considered cumulatively denied [Petitioner] the right to a fair trial." (Id., p. 16.)

Regarding Petitioner's above *habeas* claim, the West Virginia Supreme Court found as follows:

> We have heretofore determined that allowing a thirteenth juror to attend jury deliberations; the defendant's absence from a discussion concerning jury instructions; the trial court's off the record discussions with counsel; and permitting counsel of both sides an additional peremptory strike of potential alternate jurors continued harmless error. We believe that these errors, when viewed in the context of the entire trial below and the evidence adduced, were not numerous and did not prevent the defendant from receiving a fair trial.

(Document No. 1-1, p. 12.)

In Arnold v. Evatt, 113 F.3d 1352 (4th Cir. 1991), the Fourth Circuit Court of Appeals specifically rejected a request to cumulatively review alleged trial court errors. Id. A legitimate cumulative error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all alleged errors. See Fisher v. Angelone, 163 F.3d 835 (4th Cir.

1998); United States v. Russell, 34 Fed.Appx. 927 (4th Cir. 2002)(unpublished). The undersigned first notes that Petitioner's foregoing claims were rejected by the West Virginia Supreme when considered individually and cumulatively. (Document No. 1-1.) To the extent Petitioner basis his cumulative error claim upon the alleged bias of Juror Wickline and the alleged suppression of Mr. Fortner's mental health record, the undersigned has considered and rejected Petitioner's claim of constitutional error. Regarding the remaining cumulative error claims, Petitioner has failed to establish that any of the claims individually constitute constitutional error. (Document No. 1 and 18.) The undersigned has otherwise not found any error in the conduct of the trial of constitutional magnitude as Petitioner claims. Accordingly, the undersigned finds that there is no error to cumulate in this case. Based on the foregoing, Petitioner has failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. Therefore, Respondent is entitled to summary judgment regarding the above claim of ineffective assistance of counsel.

**4.    Due Process Violations:**

In his Petition, Petitioner argues that the "decisions of the West Virginia Supreme Court of Appeals contravene Due Process of Law." (Document No. 1, p. 8.) First, Petitioner argues that "the Court's treatment of the extra juror who was in attendance at deliberations and the unchallenged, but unqualified, juror [Wickline] contravene the requirement of a jury comprised of twelve *qualified* jurors." (Id.) Second, Petitioner claims that "the Court's holding that to award a new trial based upon newly discovered evidence the proponent of the new evidence must show that the evidence will produce an opposite result establishes a requirement which based on an unconstitutionally vague standard." (Id.) Third, Petitioner asserts that "the Court, by relying upon 'facts' which are contrary to the actual record in [Petitioner's] case deprived [Petitioner] of his right to a fair appeal." (Id.)

41

Petitioner states that the West Virginia Supreme Court's "2014 opinion erroneously states that the murder occurred at Petitioner's residence and that Fortner entered a plea to murder in 2009." (Id., p. 9.) Finally, Petitioner states that the forgoing grounds "are based upon the Supreme Court of Appeals actions" and "were presented in some form to that Court which rejected them." (Id., p. 9.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's claim should be dismissed because the "decision of the West Virginia Supreme Court of Appeals do no violate Petitioner's due process rights." (Document Nos. 11 and 14.) First, Respondent argues that the West Virginia Supreme Court's "analysis regarding Juror Wickline's (formerly Foster's) non-disclosures demonstrate that no violation of Petitioner's federal rights occurred as Juror Wickline had no interest in the outcome of Petitioner's case." (Document No. 14, p. 12.) Second, Respondent contends that the West Virginia Supreme Court "properly concluded under the plain error doctrine that 'there is no likelihood that the thirteenth juror's presence during jury deliberations prejudiced the defendant or affected the outcome of the proceedings,' as 'the thirteenth juror was merely present in the jury room but did not take part in the deliberations." (Id.) Third, Respondent argues "Petitioner utterly fails, both below and in the current Petition, to demonstrate that the fourth prong of State v. Frazier is unconstitutionally vague." (Id., p. 13.) Finally, Respondent argues that the West Virginia Supreme Court did not rely upon facts that were contrary to the actual record, but properly considered Mr. Fortner's *habeas* testimony when making its ruling. (Id.) Respondent, therefore, contends that Petitioner's foregoing claim should be dismissed. (Id., pp. 12 - 15.)

In Response, Petitioner states that he "concedes that this ground is not a ground which stands on its own," but "it is a continuation of the previous ground as it overlaps with ground three." (Document No. 18, p. 16.) Petitioner argues that "[t]he treatment by the State Supreme Court of the many errors which were made in [Petitioner's] case both at the trial and in considering the post trial

habeas corpus proceedings and the motion for new trial represent a violation of due process of law which supports the award of the Petitioner's writ." (Id., p. 17.)

*Habeas* petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 66 (1994). The petition must "set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts. "[N]otice pleading is not sufficient [in federal *habeas corpus*], for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Blackledge v. Allison, 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); also see Bernier v. Moore, 441 F.2d 395, 396 (1st Cir. 1971)(stating that "[t]he fundamental purpose of *habeas corpus* would be undermined if the writ were prostituted by holding it out as available upon mere 'notice' without any showing of entitlement.") The petitioner must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992), cert. denied, 507 U.S. 923, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), *abrogation on other grounds recognized*, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Unsupported, conclusory allegations do not entitle a petitioner to relief. See Beasley, 649 F.Supp. at 566(finding that "[m]ere conclusory charges of perjury and the knowing use of perjured testimony is insufficient to warrant a hearing or habeas relief"); Jones, 66 F.3d at 204 - 05(stating that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"). The undersigned finds that Petitioner above claim is improperly pled. Petitioner merely concludes that decisions by the West Virginia Supreme Court "contravene Due Process of Law." Although Petitioner names the specific decisions of the West Virginia Supreme Court that he believes "contravene Due Process of Law," Petitioner fails to set forth any analysis as to how the decisions "contravene Due Process of law." Therefore, the above claim of should be dismissed.

The undersigned notes that Petitioner challenges the West Virginia Supreme Court's decisions regarding the following: (1) the alternate juror's presence during jury deliberations; (2) whether Juror Wickline was a biased and unqualified juror; (3) the State's suppression of exculpatory evidence; and (4) whether the standard for a new trial as set forth in State v. Frazier was unconstitutionally vague. (Document No. 1, p. 8.) To the extent Petitioner is attempting to argue that his due process rights were violated based on each of the foregoing, the undersigned will briefly considered his claims.

First, a thorough review of the record reveals that Petitioner's due process claim based upon the alternate juror's attendance at deliberations and the alleged vagueness of the standard for a new trial as set forth in State v. Frazier, 162 W.Va. 935, 253 S.E.2d 534 (1979), are unexhausted claims. Although Petitioner states that the foregoing claims were presented "in some form" to the West Virginia Supreme Court, exhaustion requires that a claim be "fairly presented." "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogation on other grounds recognized*, United States v. Barnett, 644 F.3d 192 (4th Cir. 2011). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 886, 130 L.Ed.2d 865 (1995); see also Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004)(stating that "[a] litigant wishing to raise a federal issue can easily indicate the federal law

basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Petitioner must also provide the state court with the facts supporting the claimed constitutional violation and "explain how those alleged events establish a violation of his constitutional rights." Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994). In the instant case, a review of the record reveals that Petitioner never presented to the West Virginia Supreme Court his federal due process claim concerning the presence of the alternate juror during jury deliberations. Petitioner's challenge to presence of the alternate juror was based solely upon violations of State law.[9] (Document No. 1-1, pp. 2 - 3 and Document No. 11-1, pp. 11 - 18, 130 - 139.) The record further reveals that Petitioner never presented to the West Virginia Supreme Court his claim regarding the alleged vagueness of the standard for granting a new trial as set forth in State v. Frazier. Petitioner merely argued to the West Virginia Supreme Court that the evidence was sufficient to require a new trial pursuant to State v. Frazier. (Document No. 1, pp. 16 - 17 and Document No. 11-3, pp. 48 - 51.) Based upon the undersigned's review of the underlying State Court record, Petitioner's arguments in State Court concerning the foregoing claims did not rely upon (1) a specific federal constitutional right; (2) a particular constitutional provision; (3) a federal constitutional case; or (4) a State case raising a pertinent constitutional issue. Martin v. Solem, 801 F.2d 324, 330 (8th Cir. 1986). Therefore, the undersigned finds that the Petitioner's federal due process claim based upon the presence of the alternate juror and the alleged vagueness of the

---

[9] On his direct appeal, Petitioner argued that he was denied his right to "a trial by twelve persons, contrary to the provisions of Section 14, Article 8 of the Constitution of West Virginia and contrary to Rule 23(b), Rules of Criminal Procedure." (Document No. 11-1, p. 11.) In his State habeas petition, Petitioner argued that the "presence of an alternate or 13th juror in verdict deliberations violated the requirements of West Virginia Constitution, Article 3, Section 14, which plainly commands a "jury of twelve." (Id., pp. 130 - 139.)

standard set forth in State v. Frazier are unexhausted.

Second, Petitioner appears to argue that he was denied his right to federal due process because Juror Wickline was a biased and unqualified juror. For the reasons stated above in Section One, the undersigned finds Petitioner's claim that Juror Wickline was biased to be without merit. To the extent Petitioner is claiming that Juror Wickline was disqualified pursuant to West Virginia Code § 56-6-14, his claim is not cognizable in federal *habeas* corpus.[10] Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998)(citing Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir. 1976)(stating that the "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary")); also see Estelle, 502 U.S. at 67 - 68, 112 S.Ct. at 475 (stating that "[i]t is not the province of a federal habeas corpus court to reexamine state court determinations on state-law questions.") Accordingly, the undersigned finds that the Petitioner's federal due process claim based upon Juror Wickline's alleged bias and un-qualification is without merit.

Third, Petitioner asserts that his federal due process rights were violated based upon the State's suppression of allegedly exculpatory evidence (Mr. Fortner's mental health records). The undersigned that has thoroughly considered and rejected Petitioner's Brady claim for the reasons set forth above in Section Two. Thus, Petitioner's due process claim based on the alleged exculpatory evidence is without merit. Finally, Petitioner states that the West Virginia Supreme Court's "2014 opinion erroneously states that the murder occurred at Petitioner's residence and that Fortner entered a plea to murder in 2009." (Document No. 1, p. 9.) To the extent Petitioner argues

---

[10]  Concerning Juror Wickline, Petitioner argued to the West Virginia Supreme Court that Juror Wickline was disqualified pursuant to West Virginia Code § 56-6-14. (Document No. 1, p. 18 and Document No. 11-3, pp. 43, 47, 56 - 57.)

that the foregoing resulted in a decision that was based on an unreasonable determination of the facts, Petitioner argument is without merit. Although the West Virginia Supreme incorrectly stated the foregoing facts, the error was only made in the West Virginia Supreme Court's summary of the background of the case. (Document No. 1-2, p. 15.) The West Virginia Supreme Court did not rely upon the  foregoing facts when considering the merits of Petitioner's claims. Based upon the foregoing, the undersigned respectfully recommends that Petitioner's about claim be dismissed.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion for Summary Judgment (Document No. 11), **DISMISS** Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 1), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to transmit a copy of the same to Petitioner and counsel of record.

Dated: January 13, 2016.

Omar J. Aboulhosn
United States Magistrate Judge

48