# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

MICHAEL E. BROWN,

                Petitioner,

v.                               CIVIL ACTION NO.   3:15-01197

DAVID BALLARD, Warden,

                Respondent.

## MEMORDANDUM OPNION AND ORDER

Pending is a motion for summary judgment brought by Respondent David Ballard ("Ballard"), a prison warden, on prisoner Michael E. Brown's ("Brown") petition for the writ of habeas corpus. ECF No. 11. This action was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for submission to this Court of proposed findings of fact and recommendation for disposition ("PF&R"). The Magistrate Judge has submitted a PF&R concluding that Respondent's motion for summary judgment should be granted and the petition denied. PF&R, ECF No 20. Petitioner timely objected to the PF&R. Written Objections to PF&R, ECF No. 21 [hereinafter Obj.]. For the following reasons, the Court **OVERRULES** Petitioner's objections, **ACCEPTS** and **INCORPORATES** herein the findings and recommendations of the Magistrate Judge, **GRANTS** Respondent's motion for summary judgment, **DISMISSES** the petition without issuing a certificate of appealability.

This Court conducts a *de novo* review of those portions of the magistrate judge's proposed findings and recommendations to which a party objects. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."). The Court, however, is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).[1]

Petitioner's habeas appeal from a state court criminal conviction also requires this Court to apply a deferential standard of review required under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in part at 28 U.S.C. § 2254(d). *Monroe v. Angelone*, 323 F.3d 286, 297 (4th Cir. 2003). Under AEDPA, a federal court must defer to a state court's resolution of a claim that has been "adjudicated on the merits" and federal habeas relief is unavailable unless the state court's decision (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). This showing is no easy task for Petitioner.

First, Petitioner objects to the Magistrate Judge's conclusion that the decision of the West Virginia Supreme Court, which found no violation of Petitioner's Sixth Amendment right to an impartial jury based on a juror's failure to disclose that her son was a criminal defendant in another case pending before the state trial-level judge in Petitioner's case, was not contrary to clearly

---

[1] Petitioner does not contest the factual findings made by the Magistrate Judge, only the Magistrate Judge's legal conclusions. Finding support in the record for the Magistrate Judge's factual conclusions, the Court adopts the factual findings relevant to Defendants' motion for summary judgment as presented in the PF&R. PF&R at 1–13.

established federal law. Upon de novo review, the Court finds the Magistrate Judge's analysis and conclusion are error-free.

In his Objection, Petitioner contends he satisfied the second and third prongs of the test for determining if an individual is entitled to a new trial based upon juror impartiality. The Supreme Court set forth the test for determining if an individual must be granted a new trial due to juror impartiality in *McDonough Power*. The Fourth Circuit has interpreted *McDonough Power* as effectively requiring a three-part test, under which the petitioner must show: (1) a juror failed to answer honestly a material question posed in voir dire, (2) a correct response would have provided a valid basis for a challenge for cause, and (3) the fairness of the petitioner's trial was affected either by the juror's motives for concealing the response or the reasons that affect the juror's impartiality. *Conaway v. Polk*, 453 F.3d 567, 585 (4th Cir. 2006) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). Under the second prong, a challenge for cause would be granted only if the juror's response showed actual or implied bias. *Jones v. Cooper*, 311 F.3d 306, 312 (4th Cir. 2002).

Here, Juror Brenda Wickline failed to respond to a voir dire question asking if any potential juror had a family member who was a defendant in a criminal case. In the state habeas proceeding, Juror Wickline explained the Petitioner's trial was her first interaction with "the law," and she did not respond to this question because she believed the term defendant referred to an individual who had been convicted of, and not simply accused of, committing a crime. PF&R at 25 n.4. Because her son was then only accused of a crime, she believed he was not a defendant. *Id.* The West Virginia Supreme Court found there was nothing in the record to discredit Juror Wickline's testimony and that she was not actually biased. *Id.* at 25. Petitioner argues in his Objection,

nevertheless, that bias should be implied here because of Juror Wickline's connection to the parties in Petitioner's criminal trial.

The Magistrate Judge considered and properly rejected Petitioner's implied bias argument. PF&R at 25–26. Bias is implied only in "extreme situations" where it is "highly unlikely that the average person could remain impartial" in deliberating under the circumstances, *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988), such as when the juror is an employee of the prosecuting agency, a close relative of a trial participant, was formerly a juror in the same case, or a witness to or involved with the criminal transaction, *Conner v. Polk*, 407 F.3d 198, 206 (4th Cir. 2005) (citation omitted); *see also Smith v. Phillips*, 455 U.S. 209, 223 (1982) (O'Connor, J., concurring); *id.* at 232 (Marshall, J., dissenting) (recounting past examples of when juror bias has been presumed). Although Juror Wickline's son had a criminal charge pending in another case before the judge presiding over Petitioner's criminal trial, the average person could remain impartial deliberating under such circumstances. A verdict against Petitioner would gain nothing for Juror Wickline's son in his criminal case, as her son and Petitioner were not co-defendants and their cases had no bearing upon each other. No evidence compels the conclusion that Juror Wickline had improper motive in her deliberations as a juror in Petitioner's case. As troubling as it sounds that a juror failed to disclose that she had a son whose criminal charge was pending in another case heard by the Petitioner's trial judge, this alone does not support presuming the juror was biased. For this reason, the Magistrate Judge properly declined to presume Juror Wickline was biased. Accordingly, the Magistrate Judge correctly concluded that Petitioner failed to meet the second prong of *McDonough Power*'s impartial juror test because he failed to show an honest response would have provided a valid basis for a challenge for cause.[2]

---

[2] Petitioner also contends that the state court and Magistrate Judge's PF&R decisions constitute

Petitioner also contends he satisfied the third part of the test for obtaining a new trial due to juror impartiality. The third prong requires showing the fairness of the petitioner's trial was affected either by the juror's motives for concealing the response or the reasons that affect the juror's impartiality. *Conaway*, 453 F.3d at 585. Assuming Juror Wickline was actually biased based on her son being a defendant in another case before the same judge, there is no evidence on the record that her reason for not disclosing information about her son affected the fairness of Petitioner's trial. Juror Wickline did not conceal facts in order to serve on the jury. *See Conaway*, 453 F.3d at 588. Instead, she failed to respond to the voir dire question because she misunderstood it, an explanation credited by the West Virginia Supreme Court. Other evidence indicates she failed to err on the side of caution by answering yes to the question because she felt intimidated about her son coming before the trial judge and felt ashamed by her son's situation. PF&R at 19, 26. Petitioner presents no evidence sufficient to contradict Juror Wickline's reasons for her non-disclosure; nor does he offer evidence that she had a motive for not disclosing this information. Nor does Petitioner explain how Juror Wickline's reasons for not responding to the voir dire question—namely misunderstanding the question and feeling embarrassed and ashamed of her son—could have affected the fairness of Petitioner's trial. *See Jones*, 311 F.3d at 313. There is no evidence Juror Wickline's ignorance of legal terms or her embarrassment and shame for her son,

---

an "unreasonable application of the facts" in view of the evidence presented. Obj. at 2. To show a state court's decision to deny relief was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding, the petitioner must rebut by clear and convincing evidence a presumption that the state court's factual determination was correct. *See* 28 U.S.C. §§ 2254(d)(2), 2254(e)(1). Petitioner's Objection cites no portion of the record in support of his claim that the state court's factual determinations made during inquiry into Juror Wickline's bias were unreasonable. To the extent that any facts in this record could support Petitioner's 2254(d)(2) challenge, he has not carried his burden of showing by clear and convincing evidence the state court's determination that an honest response by Juror Wickline about her son's case pending before the judge in Petitioner's criminal trial would have been a valid basis for a challenge for cause.

the reasons she failed to respond honestly to voir dire, affected the fairness of Petitioner's trial. As such, Petitioner fails the third prong of the Sixth Amendment test for obtaining a new trial due to juror impartiality. For these reasons, the Magistrate Judge properly concluded the West Virginia Supreme Court's decision that Petitioner's Sixth Amendment rights were not infringed based on Juror Wickline's non-disclosures about her son during voir dire was not contrary to federal law.

Second, Petitioner objects to the Magistrate Judge's conclusion that the West Virginia Supreme Court decision rejecting Petitioner's *Brady* claim was not contrary to, or an unreasonable application of, clearly established federal law. In his state habeas appeal, and now in his federal habeas attack, Petitioner excoriates as a *Brady* violation the prosecution's failure to disclose to him during the underlying criminal proceeding certain items of evidence about his co-defendant and the State's lead witness against him, Mr. Matthew Fortner. Specifically, the State did not disclose to Petitioner records about Mr. Fortner's being a victim of sexual abuse, his mental health treatment afterward, and his drug rehabilitation records. Obj. at 3. Reviewing the PF&R de novo, the Court finds the Magistrate Judge's analysis and conclusion free of error.

"[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To state a *Brady* claim, the Petitioner must show the evidence is: (1) "favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) the evidence must have been material to the verdict such that its suppression prejudiced the defense. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Monroe*, 323 F.3d at 299-300. For evidence to be material, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (citation omitted). A "reasonable probability" is a lesser standard than the preponderance standard, and a reasonable probability of a different result is shown when the suppression of evidence "undermines confidence in the outcome of the trial." *Id.* The question of materiality must be considered "collectively, not item by item." *Id.* at 436.

Applying *Brady's* progeny, the West Virginia Supreme Court found the evidence of Mr. Fortner's mental health records was neither exculpatory, nor suppressed by the prosecution, nor material. *Brown v. Coleman*, No. 14-0134, 2014 WL 6607517, at *4 (W. Va. Nov. 21, 2014), *available at* ECF No. 1–2 at 17–18; PF&R at 33. The court found this evidence immaterial "in light of the fact that Petitioner had the opportunity to examine Mr. Fortner regarding his criminal and mental health history." *Brown*, 2014 WL 6607517, at *4), *available at* ECF No. 1–2 at 17–18.

The West Virginia Supreme Court's decision finding the evidence at issue immaterial was not contrary to, or an unreasonable application of, clearly established federal law. Assuming Petitioner could show the evidence about Mr. Fortner's sexual abuse, mental health treatment, and drug rehabilitation was favorable to Petitioner and suppressed by the State, Petitioner cannot show the West Virginia Supreme Court misapplied *Brady's* materiality prong. The materiality prong requires showing the suppression of evidence prejudiced the defense. *See, e.g.*, *Monroe*, 323 F.3d at 299–300. Here, Petitioner maintains he would have used the supposedly suppressed evidence to impeach Mr. Fortner. The record indicates Petitioner, during his underlying criminal trial, thoroughly cross examined Mr. Fortner regarding Mr. Fortner's journal entries, mental health concerns, history of drug and alcohol abuse, prior drug convictions, admission to rehabilitation, and multiple inconsistent statements Mr. Fortner made about the murders. *See* PF&R at 38 (listing

portions of record).[3] Thus, Petitioner is not claiming the supposedly suppressed documents contained any substantial additional information giving rise to grounds for impeaching Mr. Fortner that Petitioner did not already have at trial. Instead, Petitioner generically asserts that he would have used the documents to impeach Mr. Fortner.

But Petitioner does not allege how he would have further impeached Mr. Fortner. Petitioner is not arguing Mr. Fortner's responses on cross examination were inconsistent with facts contained in the evidence at issue, making the documents inapplicable for impeaching Mr. Fortner by prior inconsistent statement or contradiction. Looking to the other impeachment methods, it is unclear how Petitioner would have been able to use the evidence at issue to impeach Mr. Fortner beyond the extent to which Petitioner already did by cross examining him on the facts contained in the supposedly suppressed evidence. Thus, it is unclear how, if at all, Petitioner could have used the evidence at issue to impeach Mr. Fortner. In asking if the evidence was material, the Court must consider if there was a reasonable probability that, had the evidence been used for impeachment purposes, the result of the proceeding would have been different. *Kyles*, 514 U.S. at 434.

Considering the Petitioner's other opportunities to impeach Mr. Fortner and the unexplained utility of the documents as impeachment tools, a court could reasonably conclude the evidence at issue was not material because even if the evidence had been disclosed to the Defense, it is not reasonably possible that the result of the proceeding would have been different in light of the mountain of other impeachment evidence already admitted against Mr. Fortner. "A sporting theory of justice might assume"[4] Petitioner could have swayed the Jury to discredit Mr. Fortner, beyond the extent to which it already did, using a magic bullet found in the supposedly suppressed

---

[3] The state trial court correctly deemed irrelevant the evidence that Mr. Fortner was sexually abused. PF&R at 38.

[4] *Brady*, 373 U.S. at 90.

documents. But on habeas appeal under 28 U.S.C. § 2254(d), that is not for this Court to decide. The West Virginia Supreme Court reviewed the documents supporting Petitioner's *Brady* claim and ruled the evidence was not material because it would have been duplicative of what Petitioner already obtained by cross examining Mr. Fortner. For the reasons above, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the West Virginia Supreme Court decision denying Petitioner's *Brady* claim must remain undisturbed by this collateral attack.

Lastly, the Court considers whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).   The Court concludes that the governing standard is not satisfied in this instance; Petitioner has failed to show he was denied a constitutional right. Accordingly, the Court denies a certificate of appealability.

To conclude, the Court **OVERRULES** Petitioner's objections, **ACCEPTS** and **INCORPORATES** herein the findings and recommendations of the Magistrate Judge, **GRANTS** Respondent's motion for summary judgment, **DISMISSES** the Petition, and **DENIES** a certificate of appealability.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to Magistrate Judge Aboulhosn, counsel of record, and any unrepresented parties.

ENTER:      March 31, 2016

-9-

ROBERT C. CHAMBERS, CHIEF JUDGE